## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

UH CLEVELAND MEDICAL CENTER
3605 Warrensville Center Rd.
Shaker Heights, OH 44122

and

UH REGIONAL HOSPITALS
d/b/a UH Richmond Heights Hospital
27100 Chardon Road
Richmond Heights, OH 44143                                   Case No.  1:22-cv-909

                              Plaintiffs,

      vs.

XAVIER BECERRA
Secretary of the United States Department of
Health and Human Services
200 Independence Ave., S.W.
Washington, DC 20201

                              Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND SUMS DUE UNDER THE MEDICARE ACT

### INTRODUCTION

1.      This is a civil action brought to obtain judicial review of agency decisions regarding Medicare reimbursements rendered by Xavier Becerra (the "Secretary" or "Defendant") in his official capacity as the Secretary of the United States Department of Health and Human Services.  Plaintiffs are hospitals that participate in the Medicare program and qualify for direct graduate medical education ("DGME") payments for training medical residents.  Plaintiffs seek an order setting aside the Secretary's regulation at 42 C.F.R. §

413.79(c)(2)(iii), which unlawfully reduces Plaintiffs' DGME payments by decreasing the number of residents that Plaintiffs may claim during a fiscal year.

2.      Plaintiffs operate approved medical training programs for physician interns, residents, and fellows (collectively, "residents").  Plaintiffs receive Medicare DGME payments, which are calculated, in part, based on the number of full-time equivalent ("FTE") residents that train at each hospital.  If a resident's training time exceeds the number of years designated as the "initial residency period" ("IRP"), the resident's time is weighted at 0.5, which means that the hospital may only count one-half of the resident's time that exceeds the IRP.  Also, the number of FTEs that a hospital may claim for payment in any given year is generally capped at the number of *unweighted* FTEs that it trained in its 1996 fiscal year.

3.      The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute because it calculates a hospital's DGME payments using a weighted FTE cap rather than an unweighted FTE cap.  42 U.S.C. § 1395ww(h)(4)(F).  The effect of the unlawful regulation is to impose on Plaintiffs a weighting factor on residents that are within their IRP or, viewed differently, results in a reduction of greater than 0.5 for many residents who are beyond the IRP, which prevents Plaintiffs from claiming DGME reimbursement up to their full FTE caps authorized by statute.  Thus, the calculations of the current-year, prior-year, and penultimate-year weighted DGME FTEs (all three of which are elements of a hospital's DGME calculation in a given year) and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

4.      The Secretary's application of this regulation violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (the "APA"), and is contrary to the Medicare statute, 42

U.S.C. § 1395ww(h).  Accordingly, Plaintiffs asks this Court to reverse the Secretary's decisions and to order the Secretary to recalculate Plaintiffs' DGME payments as required by statute.

5.      Plaintiffs also challenge the Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873.  These regulations purport to require, as a condition of Medicare payment, that a provider either claim an item on the Medicare cost report or protest the item on the cost report. The Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are contrary to the Medicare statute because the regulations impermissibly constrain the authority granted to the Board by Congress to decide a provider's dissatisfaction with "the amount of total program reimbursement due the provider."  42 U.S.C. § 1395oo(a)(1)(A)(i).

## JURISDICTION AND VENUE

6.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare statute"), which establishes the Medicare program, and the APA.

7.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when the Secretary's Provider Reimbursement Review Board (the "Board") "determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received."  The Board granted EJR to Plaintiffs in a decision dated February 9, 2022.  Exhibit 1.  Accordingly, this action is timely filed within the sixty-day limitations period established at 42 U.S.C. § 1395oo(f)(1).

8.      Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1).

**PARTIES**

9.      Plaintiff UH Cleveland Medical Center is an academic medical center located in Shaker Heights, Ohio.  UH Cleveland Medical Center participates in the Medicare program and has been assigned Medicare Provider Number 36-0137.  UH Cleveland Medical Center operates graduate medical education programs and receives Medicare DGME payments.  UH Cleveland Medical Center contests the Medicare reimbursement decision for its fiscal year ending December 31, 2016.

10.      Plaintiff UH Regional Hospitals, d/b/a UH Richmond Heights Hospital, is an academic medical center located in Richmond Heights, Ohio.  UH Richmond Medical Center participates in the Medicare program and has been assigned Medicare Provider Number 36-0075.  UH Richmond Medical Center operates graduate medical education programs and receives Medicare DGME payments.  UH Richmond Medical Center contests the Medicare reimbursement decision for its fiscal year ending December 31, 2016.

11.      Defendant Xavier Becerra is the Secretary of the United States Department of Health and Human Services and is the federal officer responsible for administering the Medicare program pursuant to the Social Security Act.  Defendant is sued in his official capacity.

**BACKGROUND**

I.      **The Medicare Program and Payment for Hospital Services**

12.      Medicare is a public health insurance program that generally furnishes health benefits to participating individuals once they reach the age of 65.  42 U.S.C. § 1395c.  The Secretary has delegated much of the responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), which is a component of the United States Department of Health and Human Services.

13.     Under the Medicare statute, an eligible Medicare beneficiary is entitled to have payment made by Medicare on his or her behalf for, *inter alia*, inpatient and outpatient hospital services provided by a hospital participating in the Medicare program as a provider of health care services.  *Id.*  The Medicare program consists of four Parts:  A, B, C, and D.  Inpatient hospital services are paid under Part A of the Medicare statute.  *Id.* § 1395d.  Physician, hospital outpatient, and certain other services are paid under Medicare Part B.  *Id.* § 1395k.  Medicare Part C is an optional managed care program that pays for services that would otherwise be covered under Medicare Parts A and B.  *Id.* §§ 1395w-21–1395w-29.  Medicare Part D is an optional insurance program for prescription drugs.  *Id.* §§ 1395w-101–1395w-154.  This action concerns Medicare Part A.

## II.     Direct Graduate Medical Education

14.     The Medicare statute reimburses hospitals for the direct costs of graduate medical education.  *Id*. § 1395ww(h).  The DGME payment is calculated by multiplying a hospital's "patient load" times its "approved amount."  *Id*. § 1395ww(h)(3)(A).  The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients with respect to whom payment may be made under [Medicare] part A."  *Id*. § 1395ww(h)(3)(C).  The "approved amount" is the product of a hospital's base-period per-resident amount ("PRA") and its weighted average number of FTE residents.  *Id*. § 1395ww(h)(3)(B); 42 C.F.R. § 413.76(a).  The weighted average number of FTEs is calculated using the average of "the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods."  42 U.S.C. § 1395ww(h)(4)(G).  The following is the basic formula for calculating a hospital's DGME payment:

**PRA x (3-Year FTE Average) x (Medicare Patient Load) = DGME Payment**

15.     The Medicare statute requires that residents who are training beyond their IRP are weighted at 0.5, so that only half their time is counted.  *Id.* § 1395ww(h)(4)(C)(iv).  The IRP is defined as the period necessary for board eligibility in the resident's training program, not to exceed five years.  *Id.* § 1395ww(h)(5)(F).  Most, though not all, residents who are training beyond the IRP are participating in post-residency fellowship programs.

16.     For cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of *unweighted* DGME FTEs that a hospital may count, which is set at each hospital's number of unweighted FTEs during its most recent fiscal year that ended on or before December 31, 1996.  *Id.* § 1395ww(h)(4)(F).  Thus, a hospital's three-year FTE average in the DGME formula is limited by the number of unweighted FTEs that the hospital trained in its 1996 cost reporting period.  The FTE cap is determined "before application of weighting factors" based on the IRP.  *Id.* § 1395ww(h)(4)(F)(i).

17.     In 1997, the Secretary promulgated an unlawful regulation to implement the 1996 cap that calculates a *weighted* 1996 FTE cap to be used in the payment calculation:

> For purposes of determining direct graduate medical education payment, for cost reporting periods beginning on or after October 1, 1997, a hospital's unweighted FTE count for residents in allopathic and osteopathic medicine may not exceed the hospital's unweighted FTE count for these residents for the most recent cost reporting period ending on or before December 31, 1996. If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 1997, exceeds the limit described in this paragraph (g), the hospital's weighted FTE count (before application of the limit) will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.86(g)(4) (1997).

18.     When issuing this regulation, the Secretary stated, "We believe this proportional reduction in the hospital's unweighted FTE count is an equitable mechanism for implementing

the statutory provision." Medicare Program; Changes to the Hospital Inpatient Prospective

Payment Systems and Fiscal Year 1998 Rates, 62 Fed. Reg. 45,966, 46,005 (Aug. 29, 1997);

Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal

Year 1998 Rates, 63 Fed. Reg. 26,318, 26,330 (May 12, 1998) [hereinafter the "FY 1998 IPPS

Rule"].

19.     On August 1, 2001, the Secretary amended the regulation to determine separate

weighted 1996 FTE caps for primary care residents and non-primary care residents, effective for

cost reporting periods beginning on or after October 1, 2001. 42 C.F.R. § 413.86(g)(4)(iii)

(2001); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and

Rates and Costs of Graduate Medical Education: Fiscal Year 2002 Rates, 66 Fed. Reg. 39,828,

39,893-96 (Aug. 1, 2001) [hereinafter the "FY 2002 IPPS Rule"]. The Secretary did not change

the formula for determining the weighted 1996 FTE cap. Rather, the Secretary used the same

methodology as in the 1997 rule to calculate a primary care weighted 1996 FTE cap and a non-

primary care weighted 1996 FTE cap, which are then added together to determine an overall cap.

42 C.F.R. § 413.86(g)(4)(iii) (2001); FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

20.     In 2004, CMS redesignated the regulation from 42 C.F.R. § 413.86(g)(4)(iii) to 42

C.F.R. § 413.79(c)(2)(iii). Medicare Program; Changes to the Hospital Inpatient Prospective

Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,916, 49,112, 49,258-64 (Aug. 11,

2004).

21.     The regulation in effect during the fiscal year at issue in this action states as

follows:

> If the hospital's number of FTE residents in a cost reporting period beginning on
> or after October 1, 2001 exceeds the limit described in this section [i.e., the 1996
> unweighted cap], the hospital's weighted FTE count (before application of the
> limit) for primary care and obstetrics and gynecology residents and nonprimary

care residents, respectively, will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.79(c)(2)(iii) (2016).  This regulation is still in effect today.

22.     If a hospital's unweighted FTE count exceeds its unweighted FTE cap, the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) calculates the ratio of a hospital's unweighted FTE cap to the hospital's current-year unweighted FTE count.  *Id*. § 413.79(c)(2)(ii)-(iii) (the "proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996")*.*  This ratio represents the percentage by which the hospital's unweighted FTE cap is below the current-year unweighted FTE count.  The ratio is then multiplied by the current-year weighted FTE count (both residents within and beyond their IRP) and, thereby, reduces that already weighted FTE count.  *Id.*  The resulting number is the weighted 1996 FTE cap.  The Secretary's methodology is expressed in the following equation:

**(Unweighted FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

The Secretary describes the result of this formula as "the hospital's reduced cap."  FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

23.     The regulation calculates a hospital's DGME payment based on its weighted FTEs, which may not exceed its weighted 1996 FTE cap.  42 C.F.R. §§ 413.76(a), 413.79(c)(2)(iii).

24.     In *Milton S. Hershey Medical Center. v. Becerra*, No. 19-CV-3411, 2021 WL 1966572 (D.D.C. May 17, 2021), the plaintiff teaching hospitals sought an order setting aside the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii), asserting that the regulation is contrary to the Medicare statute and is an arbitrary and capricious exercise of agency discretion under the

APA.  The United States District Court for the District of Columbia held that the application of 42 C.F.R. § 413.79(c)(2)(iii) to compute the teaching hospitals' FTE residents "was contrary to law because the regulation effectively changed the weighting factors statutorily assigned to residents and fellows."  *Milton S. Hershey Med. Ctr.*, 2021 WL 1966572, at *1, 4-7.  The court stated that "the statue is clear:  the Secretary's rules 'shall provide, in calculating the number of full-time-equivalent residents in an approved residency program,' that residents be weighted at 1.0 and fellows at 0.5."  *Id.* at *5 (quoting 42 U.S.C. § 1395ww(h)(4)(C)).  On July 16, 2021, the Secretary filed a notice of appeal, which he subsequently withdrew.  The United States Court of Appeals for the District of Columbia Circuit dismissed the appeal on August 23, 2021.  *Milton S. Hershey Med. Ctr. v. Becerra*, No. 21-5169, 2021 WL 4057675 (D.C. Cir. Aug. 23, 2021).

### III.    Medicare Cost Report Appeals

25.    At the close of a hospital's fiscal year, it is required to submit to its designated Medicare Administrative Contractor ("MAC") a "cost report" showing both the costs incurred by the hospital during the fiscal year and the appropriate share of these costs to be apportioned to Medicare.  42 C.F.R § 413.24(f).  MACs are private companies under contract with the Secretary to pay Medicare claims and audit hospital cost reports, among other duties.  42 U.S.C. § 1395kk-1.

26.    The MAC must analyze and audit the cost report and inform the hospital of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR").  42 C.F.R. § 405.1803(a).  A hospital's DGME payment is among the components of the final payment determination reported in the NPR.

27.    A hospital may appeal a final determination of its Medicare reimbursement to the Board.  42 U.S.C. § 1395oo(a).  The Board has jurisdiction over appeals from MAC

determinations if the following requirements are met: (1) the hospital is dissatisfied with the final determination, (2) the amount in controversy is at least $10,000, and (3) the hospital requests a hearing within 180 days of receiving the final determination. *Id.*

28.     A group of hospitals may appeal a common dispute to the Board if the following requirements are met: (1) the hospitals are dissatisfied with the final determination; (2) the amount in controversy is, in the aggregate, at least $50,000; and (3) the hospitals request a hearing within 180 days of the final determination. *Id.* § 1395oo(a), (b).

29.      In addition, for group appeals, the matter at issue must involve "a single question of fact or interpretation of law, regulations, or CMS Ruling that is common to each provider in the group." 42 C.F.R. § 405.1837(a)(2).

30.     If the MAC fails to issue a timely final determination, the Medicare statute entitles a provider to a Board hearing under the following conditions: (1) the provider has not received a final determination from the MAC after filing an original or amended cost report, (2) the provider's cost report complied with the applicable rules and regulations, (3) the provider filed a request for a hearing within 180 days after notice of the contractor's determination would have been received if the determination had been timely, and (4) the amount in controversy is at least $10,000 (or at least $50,000 for a group appeal). 42 U.S.C. § 1395oo(a)(1)(B)-(C), (2)-(3). The Secretary's regulation implementing § 1395oo(a)(1)(B)-(C) states that a final determination is deemed untimely if not received, through no fault of the provider, within one year after the date of receipt by the contractor of the provider's last-filed cost report for the period. 42 C.F.R. § 405.1835(c)(1).

31.     The regulations at 42 C.F.R. § 413.24(j) and § 405.1873 require that a provider include a claim on its cost report, either as an allowable cost or a protested amount, in order to

receive or potentially receive reimbursement for that item.  These provisions apply to cost

reporting periods beginning on or after January 1, 2016.  Section 405.1873 goes on to establish

procedures the Board must follow to determine a provider's compliance with § 413.24(j).

Medicare Program: Hospital Outpatient Prospective Payment and Ambulatory Surgical Center

Payment Systems and Quality Reporting Programs, 80 Fed. Reg. 70,298, 70,551-65, 70,603-04

(Nov. 13, 2015).

32.    The statute governing the Board empowers it to decide a provider's dissatisfaction

with "the amount of total program reimbursement due the provider."  42 U.S.C. §

1395oo(a)(1)(A)(i).  Nowhere in that statute is there a requirement that a provider must include a

claim for a specific cost on its cost report before payment related to that cost can be addressed by

the Board.

33.    The Board lacks the authority to decide the validity of a Medicare regulation.  *Id.*

§ 405.1867.  If a hospital (or group of hospitals) appeals an issue that involves a question that is

beyond the Board's authority, the Board may authorize EJR of the case.  42 U.S.C. §

1395oo(f)(1); 42 C.F.R. § 405.1842.

34.    The Board must grant EJR if it determines that (1) the Board does not have the

authority to decide the legal question because the question is a challenge either to the

constitutionality of a statute or to the substantive or procedural validity of a regulation or CMS

Ruling, and (2) the Board has jurisdiction to hold a hearing on the specific matter at issue.  42

U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(f)(1).

35.    If the Board issues an EJR decision, the CMS Administrator has the right to

"review the Board's jurisdictional finding, but not the Board's authority determination."  42

C.F.R. § 405.1842(a)(3).  The Board's decision to grant EJR "becomes final and binding on the

parties unless the decision is reversed, affirmed, modified, or remanded by the Administrator."
*Id*. § 405.1842(g)(1)(iii).

36.     If the Board grants the hospital's request for EJR, the hospital may seek judicial
review of the action involving a question of law or regulations by commencing a civil action
within sixty days of the date on which notification of the Board's determination is received.   42
U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842(g)(2).

### FACTS SPECIFIC TO THIS CASE

37.     Plaintiffs are teaching hospitals that receive Medicare DGME payments.
Plaintiffs all trained residents in their fiscal year 1996 ("FY 1996") cost reporting periods.
Accordingly, the Secretary established DGME FTE caps for each Plaintiff based on its FY 1996
resident FTE count.

38.     During the fiscal year at issue in this action, Plaintiffs' unweighted FTE counts
exceeded their unweighted FTE caps.  Plaintiffs' FTE counts included residents who were both
within and beyond the IRP.  The Secretary employed the methodology of the regulation at 42
C.F.R. § 413.79(c)(2)(iii) when applying the FTE weighting factors for residents beyond their
IRP to Plaintiffs' DGME FTE caps.

39.     Plaintiffs UH Cleveland Medical Center and UH Richmond Heights Hospital
contest the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years ending on December
31, 2016.  UH Cleveland Medical Center and UH Richmond Heights Hospital timely filed
appeals with the Board following the receipt of their final determinations from their MAC,
pursuant to 42 U.S.C. § 1395oo.

40.     UH Cleveland Medical Center and UH Richmond Heights Hospital established a
group appeal, with an aggregate amount in controversy of over $50,000, contesting the

application of 42 C.F.R. § 413.79(c)(2)(iii) to their cost reports ending in 2016. The Board

assigned case number 19-1720GC to these Plaintiffs' group appeal.

41.    On December 10, 2021, Plaintiffs requested that the Board grant EJR on the

question of the validity of the Secretary's methodology for applying the FTE caps and weighting

factors as specified in 42 C.F.R. § 413.79(c)(2)(iii) to their applicable cost reporting years.

42.    On December 23, 2021, the MAC filed with the Board a "Substantive Claim

Letter." The MAC stated that UH Richmond Heights Hospital did not comply with the

requirement in 42 C.F.R. §§ 413.24(j) and 405.1873 that the provider include the cost at issue

either as an allowable cost or protested amount in its applicable cost report for a cost year

beginning on or after January 1, 2016. The MAC concluded that "the item is not reimbursable,

regardless of whether the Board further determines in a final hearing decision that the other

substantive reimbursement requirements for the specific item are or are not satisfied"

43.    On January 20, 2022, Plaintiffs requested that the Board grant EJR on the

question of the validity of 42 C.F.R. §§ 413.24(j) and 405.1873.

44.    On February 9, 2022, the Board granted EJR. The Board held as follows:

1)  It has jurisdiction over both the DGME Penalty Issue and the challenge to the
    validity of 42 C.F.R. §§ 413.24(j) and 405.1873 for the subject years and that
    the Providers in this appeal that the Providers are entitled to a hearing before
    the Board;

2)  The following participant appealed the cost reporting period beginning on
    January 1, 2016 but failed to include "an appropriate claim for the specific
    item" that is the subject of the group appeal as required under 42 C.F.R. §
    413.24(j)(1):

    •  UH Richmond Heights Hospital, Provider Number 36-0075, FYE
       12/31/2016;

3)  Based upon the Provider's assertions regarding 42 C.F.R. § 413.79(c)(2)(iii),
    as well as the assertions regarding the validity of 42 C.F.R. §§ 413.24(j) and
    405.1873, there are no findings of fact for resolution by the Board;

4)  It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

5)  It is without the authority to decide the legal questions of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid and whether the regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are valid.

45.    The Board's February 9, 2022, EJR decision constitutes the Secretary's final agency action in Board case number 19-1720GC.

46.    By filing this Complaint, UH Cleveland Medical Center and UH Richmond Heights Hospital have timely sought EJR under 42 U.S.C. § 1395oo(f)(1).

**COUNT I**
**Violations of the Medicare Statute—DGME Payments**

47.    Plaintiffs reallege and incorporate by reference paragraphs 1–46 as if fully set forth below.

48.    The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2).

49.    The Secretary's regulation implementing the weighting factors for residents beyond their IRP to the 1996 FTE cap is contrary to the Medicare statute because it determines the 1996 FTE cap after application of the weighting factors.  42 U.S.C. § 1395ww(h)(4)(F)(i). The effect of the Secretary's unlawful regulation is to impose on Plaintiffs weighting factors that result in reductions greater than 0.5 for many residents who are beyond the IRP, and the regulation prevents Plaintiffs from claiming and receiving DGME reimbursement using their full unweighted FTE caps.  42 C.F.R. § 413.79(c)(2)(iii); *Milton S. Hershey Med. Ctr.*, 2021 WL 1966572, at *4-7.  Thus, the Secretary's calculations of Plaintiffs' current-year, prior-year, and penultimate-year weighted DGME FTEs and the FTE caps are contrary to the statutory provision

14

at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

50.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute. *Milton S. Hershey Med. Ctr.*, 2021 WL 1966572, at *4-7.  First, the regulation creates a weighted 1996 FTE cap.  The statute plainly requires the Secretary to determine the FTE cap "before application of weighting factors," which is an unweighted cap.  42 U.S.C. § 1395ww(h)(4)(F)(i).  The Secretary instead applies a weighted 1996 FTE cap for the current year that is based on the ratio of the unweighted FTE cap to the current-year unweighted FTE count.  The Secretary concedes that the regulation results in "the hospital's reduced cap," which is less than the unweighted FTE cap.  FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.  The Secretary applies this weighted 1996 FTE cap as an absolute limit on the number of FTEs that can be used to calculate a hospital's DGME payment.  This weighted FTE cap is applied *after* application of the weighting factors for residents who are beyond the IRP in the current year, which violates Congress's directive to determine the cap *before* application of those weighting factors.  42 U.S.C. § 1395ww(h)(4)(F)(i).

51.     Second, the Secretary's weighted FTE cap prevented Plaintiffs from ever reaching an FTE count up to their unweighted FTE caps simply because they train fellows beyond their IRPs.  In fact, the Secretary's regulation prevents any hospital that trains fellows beyond their IRPs from reaching its 1996 FTE cap. The downward impact on the FTE count increases as a hospital trains more residents who are beyond the IRP.

52.     The following example illustrates the impact of the Secretary's unlawful regulation.  The example compares the application of 42 C.F.R. § 413.79(c)(2)(iii) to FTE data for Plaintiff UH Cleveland Medical Center during its fiscal year ending in 2016 and a

hypothetical Hospital A that has the same FTE cap as UH Cleveland Medical Center and the same count of residents within their IRPs as UH Cleveland Medical Center. The only difference between the two hospitals is that UH Cleveland Medical Center trained fellows beyond their IRPs:

| | UH Cleveland | Hospital A |
|---|---|---|
| Unweighted FTE Cap (UCap) | 403.74 | 403.74 |
| Current Year Unweighted Resident FTEs Within IRP | 389.64 | 389.64 |
| Current Year Unweighted Fellow FTEs Outside IRP | 145.82 | 0.00 |
| Current Year Total Unweighted FTEs (UFTE) | 535.46 | 389.64 |
| Current Year Total Weighted FTEs Before Application of Cap (WFTE) | 462.55 | 389.64 |
| Current Year Total Weighted FTEs After Application of Cap (WCap) | 348.77 | 389.64 |

The Secretary's formula at 42 C.F.R § 413.79(c)(2)(iii) results in a weighted FTE caps of 348.77 for UH Cleveland Medical Center, while Hospital A's allowable weighted FTEs are 389.64:

- 42 C.F.R. § 413.79(c)(2)(iii) formula:

  **(1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

- 42 C.F.R. § 413.79(c)(2)(iii) applied to UH Cleveland Medical Center:

  403.74/535.46 x 462.55 = **348.77**

53.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) results in very different DGME payments for UH Cleveland Medical Center and Hospital A. Because Hospital A does not train fellows beyond their IRPs, it receives a DGME payment based on its full unweighted FTE count of 389.64 FTEs, even though its weighted FTEs are *lower* than UH Cleveland Medical Center's weighted FTEs. Hospital A would be paid for 40.87 FTEs *more* than UH Cleveland Medical Center, even though the hospitals' unweighted FTE caps are identical, they each trained 389.64 residents within their IRP, and Hospital A trained 72.91 *fewer* weighted FTEs (before application of weighted cap) than UH Cleveland Medical Center.

54.     The Secretary's regulation results in UH Cleveland Medical Center receiving far

less DGME reimbursement than hypothetical Hospital A simply because UH Cleveland Medical Center trained 145.82 residents beyond their IRP in fiscal year 2016.  UH Cleveland Medical Center would receive far less reimbursement than Hospital A, even though it trained more individuals than Hospital A trained.  The Medicare statute requires that these fellows be weighted at 0.5, and requires that UH Cleveland Medical Center's FTE count be limited to its unweighted FTE cap of 403.74, but the Secretary has violated the statute by not calculating UH Cleveland Medical Center's FTE count up to the full FTE cap solely as a result of the Secretary's improper imposition of a weighted FTE cap.

55.     All Plaintiffs are similarly situated to UH Cleveland Medical Center.  Each Plaintiff trained residents who were beyond their IRPs.  Each Plaintiff trained a total number of residents that was higher than its unweighted FTE cap.  Therefore, each Plaintiff is prevented from receiving its full DGME payments due to the Secretary's regulation.

56.     All Plaintiffs suffered a downward payment adjustment that is greater than may be imposed by the statutory 0.5 weighting factor for training residents beyond the IRP.

57.     By establishing the 1996 FTE cap based on the hospital's unweighted FTE count for 1996, Congress entitled Plaintiffs to claim FTEs up to that cap.  The Secretary's regulation renders this impossible because Plaintiffs trained residents who are beyond the IRP.  The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute at 42 U.S.C. § 1395ww(h) and is, therefore, invalid.

**COUNT II**
**Arbitrary and Capricious Agency Action—DGME Payments**

58.     Plaintiffs reallege and incorporate by reference paragraphs 1–57 as if fully set forth below.

59.     The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary and capricious and an

17

abuse of discretion and is, therefore, invalid.  5 U.S.C. § 706(2).  By establishing a cap on FTEs, Congress intended that hospitals be paid based on that cap.  The Secretary's regulation prevents Plaintiffs from reaching their FTE caps and improperly treats similarly situated hospitals differently because hospitals with identical FTE caps and that have unweighted FTE counts greater than their caps, will receive very different payments.  When promulgating the regulation at 42 C.F.R. § 413.79(c)(2)(ii)-(iii), the Secretary wholly failed to justify this differing treatment. *See Burlington N. and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).  The Secretary did not even acknowledge that the regulation would have such an inequitable effect.  FY 1998 IPPS Rule, 63 Fed. Reg. at 26,330.  Because the Secretary "entirely failed to consider an important aspect of the problem," the regulation is "arbitrary and capricious" and cannot stand.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## COUNT III
## Violation of the Medicare Statute — Board Authority

60.     Plaintiffs reallege and incorporate by reference paragraphs 1–59 as if fully set forth below.

61.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2).

62.     Section 405.1873, which incorporates 42 C.F.R. 413.24(j), expressly precludes the Board from determining the amount of total reimbursement due the provider because, if a provider does not claim the cost or file a protest item, "the specific item is not reimbursable, regardless of whether the Board further determines in such final hearing decision that the other

18

substantive reimbursement requirements for the specific item are or are not satisfied." 42 C.F.R. § 405.1873(f)(1)(ii).

63.     The Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are contrary to the Medicare statute because the regulations impermissibly constrain the authority granted by 42 U.S.C. § 1395oo(a)(1)(A)(i) to the Board to decide a provider's dissatisfaction with "the amount of total program reimbursement due the provider." 42 U.S.C. § 1395oo(a)(1)(A)(i). Nowhere in that statute is there a requirement that a provider must include a claim or a protested amount for a specific cost on its cost report before payment related to that cost can be addressed by the Board.

<div align="center">

**COUNT IV**
**Arbitrary and Capricious Agency Action—Board Authority**

</div>

64.     Plaintiffs reallege and incorporate by reference paragraphs 1–63 as if fully set forth below.

65.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary [and] capricious [or] an abuse of discretion." 5 U.S.C. § 706(2).

66.      The regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are arbitrary and capricious and an abuse of discretion and are, therefore, invalid. 5 U.S.C. § 706(2). Congress granted to the Board the authority to decide issues brought to it by providers related to "the amount of the total program reimbursement due the provider." 42 U.S.C. § 1395oo(a)(1)(A)(i). The Secretary's regulations prevent the Board from deciding the amount of total program reimbursement due the provider.  When promulgating the regulation at 42 C.F.R. §§ 413.24(j) and 405.1873 the Secretary wholly failed to justify this break from the statute. *See Burlington N. and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005). The

Secretary did not even acknowledge that its regulation would have such an effect.  80 Fed. Reg. 70,298, 70,551-65, 70,603-04 (Nov. 13, 2015).  Because the Secretary relied on factors that Congress has not intended him to consider and "entirely failed to consider an important aspect of the problem," the regulations are "arbitrary and capricious," as well as an abuse of discretion, and must be set aside under the APA. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

<div align="center">**RELIEF REQUESTED**</div>

**WHEREFORE**, Plaintiffs respectfully request relief as follows:

1.     A declaration by the Court that the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is, therefore, invalid.

2.     A declaration that the Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873, that deny the Board's authority to decide appeals related to issues not protested or claimed by providers, is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is therefore invalid.

3.     A declaration by the Court that 42 U.S.C. § 1395ww(h) forbids the Secretary from imposing a weighted FTE cap.

4.     A declaration that 42 U.S.C. § 1395oo(a)(1)(A)(i) forbids the Secretary from restricting the Board's authority to hear appeals related to the total program reimbursement due providers;

5.     A declaration by the Court that the Secretary must apply FTE weighting factors after applying the unweighted FTE cap as required by 42 U.S.C. § 1395ww(h).

6.      An order from this Court requiring the Secretary to recalculate Plaintiffs' DGME payments consistent with the Medicare statute so that the Plaintiffs' FTE counts are weighted for residents beyond the IRP at 0.5 and are capped based on the number of residents trained in the most recent cost reporting periods ending on or before December 31, 1996 as subsequently adjusted by Congress.

7.      An order from this Court requiring the Secretary to pay Plaintiffs interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2).

8.      An order from this Court awarding Plaintiffs the costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Ronald S. Connelly
Ronald S. Connelly
D.C. Bar No. 488298
POWERS PYLES SUTTER & VERVILLE, PC
1501 M Street, N.W., 7th Floor
Washington, DC 20005
Tel. (202) 872-6762
Fax (202) 785-1756
Ron.Connelly@PowersLaw.com
Attorney for Plaintiffs

</div>

Dated:  April 4, 2022