

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Provider Reimbursement Review Board
7500 Security Blvd.
Mail Stop: B1-01-31
Baltimore, MD 21244
410-786-2671

<u>Via Electronic Delivery</u>

Ronald Connelly
Powers, Pyles, Sutter & Verville, PC
1501 M St., NW, 7th Fl.
Washington, DC 20005

    RE: *EJR Determination*
          UHHS CY 2016 Incorrect DGME cap & weighting for residents beyond IRP CIRP Grp.
          Case No. 19-1720GC

Dear Mr. Connelly:

The Provider Reimbursement Review Board ("Board") has reviewed the Providers' December 10, 2021 request for expedited judicial review ("EJR") in the above-referenced group appeal as well as the January 20, 2022 EJR filed, as a response to the Board's request for substantive claim comments issued December 30, 2021. The decision of the Board is set forth below.

**Issue in Dispute**

The Provider's issue statement describes the DGME Penalty issue as follows:

> <u>Brief description of the issue:</u>
>
> Whether the Medicare Administrative Contractor ("MAC") must correct its application of the Provider's cap of full-time equivalent ("FTE") residents and the weighting of residents training beyond the initial residency period ("IRP") used for determining payments for direct graduate medical education ("DGME").
>
> <u>Statement identifying the legal basis for the appeal:</u>
>
> The Medicare statute caps the number of DGME FTEs that a provider may claim, 42 U.S.C. § 1395ww(h)(4)(F), and also weights DGME FTEs at 0.5 for residents who are beyond the IRP, id. § 1395ww(h)(4)(C). The Provider disputes the computation of the current-year, prior-year, and penultimate-year weighted DGME FTEs, the three-year FTE average, and the FTE cap as applied to the current fiscal year. CMS's regulation at 42 C.F.R. § 413.79(c)(2) implementing the cap and weighting factors is contrary to the statute because it imposes on the Provider a weighting factor of greater than 0.5 for residents who are beyond

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 2 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 2

the IRP and prevents the Provider from claiming FTEs up to its full FTE cap. 42 C.F.R. § 413.79(c)(2). The regulation at 42 C.F.R. § 413.79(c)(2) is, therefore, invalid, and the MAC must recalculate the Provider's DGME payment consistent with the statute so that the DGME cap is set at the number of FTE residents that the Provider trained in its most recent cost reporting periods ending on or before December 31, 1996, and residents beyond the IRP are weighted at no more than 0.5.[1]

**Background**

The Medicare statute requires the Secretary[2] to reimburse hospitals for the "direct" costs of hosting graduate medical training programs for physician residents (direct graduate medical education or "DGME").[3] These costs include the salaries of teaching physicians and stipends paid to resident physicians.[4]

The Medicare statute prescribes a formula for computing annual DGME payments to hospitals. The statutory formula consists of three components:

1. The hospital's number of FTE residents, or "FTE count;"

2. The hospital's average cost per resident (*i.e.* the per resident amount or "PRA"); and

3. The hospital's patient load, which is the percentage of a hospital's inpatient treatment days attributable to Medicare Part A and Part C beneficiaries.[5]

These appeals concern the first component of the DGME payment calculation—the resident FTE count.

A hospital's FTE count for DGME reimbursement is the number of residents trained at the hospital as adjusted by three statutory provisions. First, the statute, 42 U.S.C. § 1395ww(h)(4)(C), assigned different weights to residents depending on their status. The statute states that:

> (C) . . . [I]n calculating the number of full-time equivalent residents in an approved residency period---
>
> (ii) . . .for a resident who is in the resident's initial residency period . . . the weighting factor is 1.0 . . .
>
> (iv) . . .for a resident who is not in the resident's initial residency period . . . the weighting factor is .50.

---

[1] Group Issue Statements.
[2] of the Department of Health and Human Services.
[3] 42 U.S.C. § 1395ww(h).
[4] *See* S. Rep. No. 404, 89th Cong. 1st Sess 36 (1965); H.R. No 213, 89th Cong., 1st Sess. 32 (1965).
[5] 42 U.S.C. § 1395(h).

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 3

Pursuant to this statutory provision, FTEs attributable to residents who are training in their initial residency period[6] ("*IRP residents*") are weighted at 100 percent or 1.0, while FTEs attributable to residents who are not in their initial residency period (commonly referred to as "*fellows*") are weighted at 50 percent or 0.5. The sum of the weighted FTEs for IRP residents and fellows in a given year is known as a hospital's "weighted FTE count." For example, under this weighting assignment, a hospital that trained 10 IRPs and 10 fellows in a given year would have a weighted FTE count of 15.

On August 5, 1997, Congress enacted § 4623 of the Balanced Budget Act of 1997 ("BBA")[7] which added 42 U.S.C. § 1395ww(h)(4)(F) to establish a limit on the number of osteopathic and allopathic residents that a hospital can be included in its FTE count for DGME payments. For cost reporting periods beginning on or after October 1, 1997, a hospital's unweighted DGME FTE count could not exceed the hospital's unweighted FTE count for its most recent cost reporting period ending on or before December 31, 1996. In this regard, § 1395(h)(4)(F)(i) states:

> [F]or purposes of a cost reporting period beginning on or after October 1, 1997 . . . the total number of full-time equivalent residents before the application of the weighting factors (as determined under this paragraph) with respect to a hospital's approved medical residency training program in the fields of allopathic and osteopathic medicine *may not exceed* the number (or 130 percent of such number in the case of a hospital located in a rural area) of such full-time equivalent residents for the hospital's most recent cost reporting period ending on or before December 31, 1996.[8]

Further, 42 U.S.C. § 1395ww(h)(4)(G)(i) provides that residents are counted on a three-year average. Finally, 42 U.S.C. § 1395ww(h)(4)(A) directs the Secretary to "establish rules consistent with [§ 1395ww(h)(4)] for the computation of the number of full-time equivalent residents in an approved medical residency training program."

CMS implemented BBA § 4623, in part, by promulgating regulations at 42 C.F.R. § 413.86(g)(4) to implement the unweighted FTE cap.[9] Specifically, in the FY 1998 inpatient prospective payment system ("IPPS") final rule published on August 20, 1997 ("FY 1998 IPPS Final Rule"), CMS promulgated revisions to 42 C.F.R. § 413.86(g)(4) and included the following explanation in the preamble to that rule:

> *To address situations in which a hospital increases the number of FTE residents over the cap*, notwithstanding the limit established under section 1886(h)(4)(F), we are establishing the following

---

[6] "Initial residency period" is defined in the statute as the minimum number of years required for Board eligibility. 42 U.S.C. § 1395ww(h)(5)(F).
[7] Pub. L. 105–33, § 4623, 111 Stat. 251, 477 (1997).
[8] 42 U.S.C. § 1395ww(h)(4)(F)(i) (emphasis added). Further, 42 U.S.C. § 1395ww(h)(4)(H) directs the Secretary to establish rules for determining the caps of hospitals that establish new programs after December 31, 1996.
[9] 62 Fed. Reg. 45966, 45967, 46004 (Aug. 29, 1997).

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 4 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 4

> policy for determining the hospital's weighted direct GME FTE count for cost reporting periods beginning on or after October 1, 1997.
>
> • *Determine the ratio of* the hospital's unweighted FTE count for residents in those specialties for the most recent cost reporting period ending on or before December 31, 1996, *to* the hospital's number of FTE residents without application of the cap for the cost reporting period at issue.
>
> • *Multiply the ratio determined above by* the weighted FTE count for those residents for the cost reporting period. Add the weighted count of residents in dentistry and podiatry to determine the weighted FTEs for the cost reporting period. This methodology should be used for purposes of determining payment for cost reporting periods beginning on or after October 1, 1997. . . .
>
> For example, if the hospital's FTE count of residents in its cost reporting period ending December 31, 1996 is 100 residents before application of the initial residency weighting factors and the hospital's number of residents for its December 31, 1990 cost reporting period is 110 FTE residents, the ratio of residents in the two cost reporting periods equals 100/110. If the hospital's weighted FTE count is 100 FTE residents in the December 31, 1998 cost reporting period (that is, of the 110 unweighted residents, 20 are beyond the initial residency period and are weighted as 0.5 FTE), the hospital's weighted FTE count for determining direct GME payment is equal to (100/110) [x] 100, or 90.9 FTE residents. . . .
>
> *****
>
> We believe this **proportional** reduction in the hospital's unweighted FTE count is an equitable mechanism for implementing the statutory provision.[10]

Section 413.86(g)(4) remained unchanged until the FY 2002 IPPS final rule published on August 1, 2001 ("FY 2002 IPPS Final Rule").[11] Therein, the Secretary modified the allowable FTEs formula so that the proportionate reduction to the weighted FTE count would be calculated separately for FTEs attributable to residents trained in primary care, obstetrics and gynecology programs and residents training in nonprimary care programs. In that final rule, the modified methodology, effective for cost report periods beginning on or after October 1, 2001 was:

---

[10] 62 Fed. Reg. at 46005 (emphasis added).
[11] 66 Fed. Reg. 39826 (Aug. 1, 2001).

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 5 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 5

> *Step 1.* Determine that the hospital's total unweighted FTE counts in the payment year cost reporting period and the prior two immediately preceding cost reporting periods for all residents in allopathic and osteopathic medicine do not exceed the hospital's FTE cap for these residents in accordance with § 413.86(g)(4). *If the hospital's total unweighted FTE count in a cost reporting period exceeds its cap*, the hospital's weighted FTE count, for primary care and obstetrics and gynecology residents and nonprimary care residents, respectively, will be reduced *in the same **proportion*** that the number of these FTE residents for that cost reporting period exceeds the unweighted FTE count in the cap. The ***proportional reduction*** is calculated *for primary care **and** obstetrics and gynecology residents and nonprimary care residents separately* in the following manner:
>
> > (FTE cap/unweighted total FTEs in the cost reporting period) × (weighted primary care and obstetrics and gynecology FTEs in the cost reporting period)
> >
> > plus
> >
> > (FTE cap/unweighted total FTEs in the cost reporting period) × (weighted nonprimary care FTEs in the cost reporting period).
>
> Add the two products to determine the hospital's reduced cap.[12]

To codify this change, the Secretary added clause (iii) to 42 § 413.86(g)(4). In the final rule published on the August 11, 2004, CMS relocated 42 C.F.R. § 413.86(g)(4)(iii) to 42 C.F.R. § 413.79(c)(2)(iii).[13] This regulation is the focus of these appeals and this EJR request, and it states the following:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 2001 exceeds the limit described in this section [*i.e.*, the FTE cap or limit], the hospital's weighted FTE count (before application of the limit) for primary care and obstetrics and gynecology residents and nonresidents, respectively, will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE

---

[12] *Id.* at 39894 (emphasis added).
[13] *See* 69 Fed. Reg. 48916, 49258-64. As part of the relocation, CMS modified the language slightly by removing the references to "paragraph (g)" that was in the prior version of the regulation and replacing it them with reference to "the limit described in this section."

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 6 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 6

> residents for the most recent cost reporting period ending on or before December 31, 1996.[14]

As previously noted, this regulation addresses how to reduce a hospital's weighted FTE count for a fiscal year when the unweighted FTE count for that fiscal year exceeds the hospital's unweighted FTE cap.

On their cost reports, hospitals report the number of allopathic and osteopathic FTE residents (before applying the weighting factors mentioned above) that were actually trained at the facility that year.[15]

In addition, the statute sets the number of FTEs a hospital can claim for reimbursement as the hospital's average FTE count between the present, prior and penultimate years. The statute states:

> [T]he total number of full-time equivalent residents for determining a hospital's graduate medical education payment shall equal the average of the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods.[16]

Therefore, a hospital's present year FTE count, after applying the weighting factors and FTE caps, is averaged with the FTE counts from the prior and penultimate years.

**The Providers' Position**

The Providers are requesting the Board grant EJR over the validity of the regulation at 42 C.F.R. § 413.79(c)(2)(iii) which implements the DGME cap on full-time equivalent ("FTE") residents and the FTE weighting factors, arguing that it is contrary to statute because it determines the cap after application of weighting factors.[17] The Providers explain that they are teaching hospitals that receive DGME payments, and that during the cost year in dispute, their unweighted FTE count exceeded it FTE cap. They also trained fellows and other residents who were beyond their initial residency period ("IRP").[18]

The Providers claim that the regulation, 42 C.F.R. § 413.79(c)(2)(iii), is contrary to the statute for several reasons. First, the regulation creates a weighted FTE cap. The statute requires a cap determination "before the application of the weighting factors" which is an unweighted cap.[19] Instead, a weighted FTE cap is determined for the current year that is based on the ratio of the

---

[14] 42 C.F.R. §§ 413.79(c)(2)(iii) (2011). The Secretary has not made any changes to § 413.79(c)(2)(iii) since the FY 2005 IPPS final rule.
[15] 77 Fed. Reg. 53258, 53423 (Aug. 31, 2012) (stating that when a hospital trains residents in excess of its cap, "it should report those FTE residents on its cost report regardless of whether or not it is training over its caps.")
[16] 42 U.S.C. § 1395ww(h)(4)(G)(i).
[17] Providers' Consolidated Petition for Expedited Judicial Review at 1 (Dec. 10, 2021) (citing 42 U.S.C. §§ 1395oo(f)(1) & 1395ww(h)(4)(F); 42 C.F.R. § 405.1842(d) (hereinafter "EJR Request").
[18] *Id.* at 8-9.
[19] 42 U.S.C. § 1395ww(h)(4)(F)(i).

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 7

1996 unweighted FTE count to the current year unweighted FTE count. The resulting equation, WFTE(UCAP/UFTE) = WCap,[20] is applied to the weighted FTE count in the current year which creates a second FTE cap that is the absolute limit on the number of FTEs that can go into the DGME payment calculation. The Providers contend that the second cap is determined after the application of the weighting factors to fellows in the current year which violates Congress' directive to determine the cap before the application of the weighting factors.[21]

Second, the Providers argue, the weighted FTE cap prevents a hospital from ever reaching its 1996 unweighted FTE cap if it trains any fellows. The Providers explain that the downward impact on the FTE count increases as hospital trains more residents beyond the IRP and the problem increase as a hospital trains more fellows because the methodology amplifies the reduction.

Third, in some situations, the regulation imposes a weighting factor that reduces FTE time by more than 0.5, contrary to the statute, creating a reduction below the unweight FTE cap and the current year FTE count. The Providers point out that the cap was established based on the hospital's unweight FTE count for 1996 and by doing so, Congress entitled Providers to claim FTEs up to that cap.

The Medicare Contractor has not filed a response to the EJR Request and the time for doing so has elapsed.[22]

The Providers conclude that the regulation, 42 C.F.R. § 413.79(c)(2)(iii), is contrary to the statute, is arbitrary and capricious and an abuse of discretion. Since, the Board lacks the authority to grant the relief sought, the request for EJR should be granted.

**Decision of the Board**

Pursuant to 42 U.S.C. § 1395oo(f)(1) and the regulations at 42 C.F.R. § 405.1842(f)(1) (2021), the Board is required to grant an EJR request if it determines that: (i) the Board has jurisdiction to conduct a hearing on the specific matter at issue; and (ii) the Board lacks the authority to decide a specific legal question relevant to the specific matter at issue because the legal question is a challenge either to the constitutionality of a provision of a statute or to the substantive or procedural validity of a regulation or CMS Ruling.

A group of Providers generally have a right to a hearing before the Board with respect to specific items claimed on timely filed cost reports if:

---

[20] WFTE is weighted FTE; UCap is unweighted cap; UFTE is unweighted FTE; Wcap is weighted cap.
[21] *Id.* at §1395(h)(4)(F)(i).
[22] PRRB Rule 42.4 (v. 3.1, 2021) ("If the Medicare contractor opposes an EJR request filed by a provider or group of providers, then it must file its response within five (5) business days of the filing of the EJR Request."). The EJR Request was filed on Friday, December 10, 2021, so a response would have been due no later than 11:59 p.m. (Eastern Time) Friday, December 17.

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 8

- They are dissatisfied with final determinations of the Medicare Contractor;[23]
- The request for a hearing of each Provider is filed within 180 days of the date of receipt of the final determinations. Providers must appeal from a "final determination" related to their cost report or payment, which includes an NPR, a Revised NPR, or failure to timely issue a final determination; [24]
- The matter at issue involves a single question of fact or interpretation of law, regulations, or CMS Rulings that is common to each provider in the group; and
- The amount in controversy is, in the aggregate, $50,000 or more.[25]

In this case, both Providers filed timely appeals from NPRs of the DGME issue and Board review of the subject matter appealed is not precluded by statute or regulation. The claimed amount in controversy in this case exceeds the $50,000 threshold. The Medicare Contractor has not filed any jurisdictional challenge or noted any jurisdictional impediments since the receipt of the initial appeal and the Providers' EJR Request. Accordingly, the Board finds that it has jurisdiction over the appeal and the participants.

### A. *Board review of compliance with the reimbursement requirement of an appropriate cost report claim pursuant to 42 C.F.R. § 405.1873 for Cost Reports Beginning on or After January 1, 2016*

1. <u>Regulatory Background</u>

For cost report periods beginning on or after January 1, 2016, the regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are applicable. The regulation, 413.24(j) requires that:

> (1) *General Requirement.* In order for a provider to receive or potentially qualify for reimbursement for a specific item for its cost reporting period, the provider's cost report, whether determined on an as submitted, as amended, or as adjusted basis (as prescribed in paragraph (j)(3) of this section), **must include an appropriate claim for the <u>specific item</u>**, by either—
>
> (i) Claiming full reimbursement in the provider's cost report for the specific item in accordance with Medicare policy, if the

---

[23] Pursuant to the final rule in the Federal Register on November 13, 2015 and effective January 1, 2016 for cost reporting periods beginning on or after January 1, 2016,25 the Secretary: "[A]dopt[ed] [her] proposal to eliminate our interpretation (in §§ 405.1835(a)(1) and 405.1840(b)(3)) that a provider must make an appropriate cost report claim for an item *in order to meet the dissatisfaction requirement for Board jurisdiction over appeals* of a timely final contractor determination or Secretary determination." 80 Fed. Reg. 70298, 70571 (Nov. 13, 2015)(emphasis added). As a result, making a specific claim (whether for reimbursement or protest) on the as-filed cost report for the issue being appealed is no longer needed to meet the dissatisfaction requirement for Board jurisdiction over an appeal of that issue.

[24] 42 U.S.C. § 1395oo(a)(1)(A)(i); *see also Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139, 144-145 (D.C. Cir. 1986).

[25] 42 U.S.C. § 1395oo(a); 42 C.F.R. §§ 405.1835 – 1840.

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 9 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 9

provider seeks payment for the item that it believes comports with program policy; or

(ii) Self-disallowing the specific item in the provider's cost report, if the provider seeks payment that it believes may not be allowable or may not comport with Medicare policy (for example, if the provider believes the contractor lacks the authority or discretion to award the reimbursement the provider seeks for the item), by following the procedures (set forth in paragraph (j)(2) of this section) for properly self-disallowing the specific item in the provider's cost report as a protested amount.

(2) *Self-disallowance procedures.* In order to properly self-disallow a specific item, the provider must—

(i)   Include an estimated reimbursement amount for each specific self-disallowed item in the protested amount line (or lines) of the provider's cost report; and

(ii) Attach a separate work sheet to the provider's cost report for each specific self-disallowed item, **explaining** why the provider self-disallowed each specific item (instead of claiming full reimbursement in its cost report for the specific item) **and describing** how the provider calculated the estimated reimbursement amount for each specific self-disallowed item.[26]

In conjunction with the regulation above, 42 C.F.R. § 405.1873(a) states:

(a) *General.* In order to receive or potentially receive reimbursement for a specific item, the provider **must include in its cost report an appropriate claim for the <u>specific</u> item** (as prescribed in § 413.24(j) of this chapter). If the provider files an appeal to the Board seeking reimbursement for the specific item and any party to such appeal questions whether the provider's cost report included an appropriate claim for the specific item, the Board must address such question in accordance with the procedures set forth in this section.

(b) *Summary of Procedures.*

    \*\*\*

(2) Limits on Board actions. The Board's specific findings of fact and conclusions of law (pursuant to paragraph (b)(1) of this section) **must not be invoked or relied on by the Board as a basis to deny,**

---

[26] (Bold and underline emphasis added.)

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 10

>   **or decline to exercise, jurisdiction** over a specific item or take any other of the actions specified in paragraph (c) of this section. . . .
>
>   \*\*\*
>
>   (d) *Two types of Board decisions that must include any factual findings and legal conclusions under paragraph (b)(1) of this section-*
>
>   \*\*\*
>
>   (2) Board expedited judicial review (EJR) decision, where EJR is granted. **If the Board issues an EJR decision where EJR is granted** regarding a legal question that is relevant to the specific item under appeal (in accordance with § 405.1842(f) (1)), **the Board's specific findings of fact and conclusions of law** (reached under paragraph (b)(1) of this section), on the question of whether the provider's cost report included an appropriate claim for the specific item, **must be included in such EJR decision** along with the other matters prescribed by 405.1842(f)(1). . . .
>
>   (e) *Two other types of Board decisions that must not include the Board's factual findings and legal conclusions under paragraph (b)(1) of this section-*
>
>   (1) Board jurisdictional dismissal decision. **If the Board issues a jurisdictional dismissal decision** regarding the specific item under appeal (pursuant to § 405.1840(c)), **the Board's specific findings of fact and conclusions of law** (in accordance with paragraph (b)(1) of this section), on the question of whether the provider's cost report included an appropriate claim for the specific item, **must not be included in such jurisdictional dismissal decision.**[27]

These regulations are applicable to the cost reporting period of all participants in these group cases. Position papers have not been filed, but both parties have submitted briefs with regard to whether the impacted Providers included an appropriate cost report claim for the disputed issue.

---

[27] (Bold and underline emphasis added.)

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 11 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 11

### 2. Appropriate Cost Report Claim: Findings of Fact and Conclusions of Law

In this appeal both providers have cost reports beginning after January 1, 2016 and are subject to the regulations on the "substantive reimbursement requirement" for an appropriate cost report claim.[28] The regulation at 42 C.F.R. § 405.1873 dictates that, for fiscal years beginning January 1, 2016 and later, the Board's findings with regard to whether or not a provider "include[d] in its cost report an appropriate claim for the *specific* item [under appeal] (as prescribed in § 413.24(j))"[29] may not be invoked or relied on by the Board to decline jurisdiction. Instead, 42 C.F.R. § 413.24(j) makes this *a requirement for reimbursement*, rather than a jurisdictional one. Nevertheless, when granting EJR, 42 C.F.R. § 405.1873(d)(2) requires the Board to include its specific findings of fact and conclusions of law findings as to whether an appropriate claim was included.

Following the Providers' December 10, 2021 EJR Request, on December 15, the Medicare Contractor filed a certification, pursuant to Board Rule 44.6 (v. 3.1, 2021) that it would be filing a Substantive Claim Challenge within twenty days following the Providers' EJR request. The Medicare Contractor filed its challenge on December 23, 2021, noting that one of the two providers in the group appeal did not make an appropriate cost report claim for the specific item in dispute (specifically, UH Richmond Heights Hospital). On December 30, 2021, the Board issued a Substantive Claim Challenge Response Scheduling Order which specified that the Providers' Representative had until January 21, 2022 to file a response to the Medicare Contractor's Substantive Claim Challenge.

On January 20, 2022, the Providers' Representative filed its Response to the MAC's Substantive Claim Letter. It plainly admits that UH Richmond Heights Hospital did not protest the DGME fellows issue on its cost report, but also that the protest item requirement of 42 C.F.R. §§ 413.24(j) and 405.1873 is invalid. The Providers' Representative simultaneously filed a separate EJR Request over the validity of 42 C.F.R. §§ 413.24(j) and 405.1873 (discussed more fully, below).

Pursuant to 42 C.F.R. § 405.1873(d)(2), the Board finds in its specific findings of facts and conclusions of law that UH Richmond Heights Hospital (Prov. No. 36-0075, FYE 12/31/2016) *failed* to make a substantive claim pursuant to 42 C.F.R. § 413.24(j)(1) and notes that this point is uncontested.

With regard to the remaining participant in this appeal, the regulation at § 405.1873(b) sets out certain procedures that must be followed in the event a party questions whether the cost report included an appropriate claim for a specific item under appeal. *In such situations where a party raises that question*, the regulation requires the Board to give the parties an adequate opportunity to submit factual evidence and legal arguments regarding whether the provider's cost report included an appropriate claim for the specific item under appeal, and upon receipt of the factual

---

[28] 42 C.F.R. § 413.24(j) (entitled "Substantive reimbursement requirement of an appropriate cost report claim"). *See also* 42 C.F.R. § 405.1873 (entitled "Board review of compliance with the reimbursement requirement of an appropriate cost report claim").
[29] (Emphasis added.)

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 12 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 12

evidence or legal argument (if any), the Board must review the evidence and argument and prepare written specific findings of fact and conclusions of law on the question of whether the provider's cost report complied with the cost report claim requirements of § 413.24(j).

The Board interprets the regulation at 42 C.F.R. § 405.1873 to only require the Board to review a provider's "compliance"[30] with the reimbursement requirement of an appropriate cost report claim for the specific item under appeal (and the supporting factual evidence and legal argument) if a party to the appeal questions whether there was an appropriate claim made.[31] In this case, although all of the participants in the group are subject to § 413.24(j), the Medicare Contractor only filed a Substantive Claim Challenge against one participant as discussed above.

As such, since no party to the appeal has questioned, pursuant to § 405.1873(a), whether an appropriate claim was made regarding the other remaining participants, the Board finds there was no regulatory obligation for the Board to affirmatively, on its own, review the appeal documents to determine whether an appropriate cost report claim was made for the other remaining participant. As a result, Board review under 42 C.F.R. § 405.1873(b) has not been triggered for the other remaining participant.

> 3. Second EJR Request: Validity of 42 C.F.R. §§ 413.24(j) and 405.1873

As noted above, when it filed its Response to the Medicare Contractor's Substantive Claim Challenge, the Providers' Representative simultaneously filed a separate EJR Request over the validity of 42 C.F.R. §§ 413.24(j) and 405.1873. The Providers request the Board grant EJR as it relates to 42 C.F.R. §§ 413.24(j) and 405.1873.[32] They claim that these regulations contravene the Board's authority set forth in 42 U.S.C. § 1395oo. They note that nowhere in that statute is there a requirement that a provider must include a claim for a specific cost on its cost report before payment related to that cost can be addressed by the Board.[33] The Providers recount how the 2008 self-disallowance regulation was held to conflict with the plain text of 42 U.S.C. § 1395oo in *Banner Heart Hosp. v. Burwell*, 201 F. Supp 3d 131, 140 (2016). They argue that the 2016 self-disallowance regulation at 42 C.F.R. 413.24(j) suffers from the same defects that led the *Banner* court to invalidate the 2008 self-disallowance regulation.[34]

With regard to the Board's jurisdiction, the Providers point to 42 U.S.C. § 1395oo(f)(1), which allows a provider to obtain judicial review "of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (*on its own motion* or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question."[35]

---

[30] 42 C.F.R. § 405.1873 is entitled "Board review of compliance with the reimbursement requirement of an appropriate cost report claim."
[31] *See* 42 C.F.R. § 405.1873(a),
[32] Providers' Petition for Expedited Judicial Review of the Validity of 42 C.F.R. §§ 413.24(j) and 405.1873, 1-2 (Jan 20, 2022).
[33] *Id.* at 9.
[34] *Id.* at 8-9.
[35] *Id.* at 11.

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 13

The Medicare Contractor has not filed a response to the EJR Request and the time for doing so has elapsed.[36]

The Board finds that it *does* have jurisdiction over the new EJR challenging the validity of 42 C.F.R. §§ 413.24(j) and 405.1873. Including a challenge to these regulations prior to the Medicare Contractor's Substantive Claim Letter would have been premature. As discussed above, the Board interprets the regulation at 42 C.F.R. § 405.1873 to only require the Board to review a provider's "compliance"[37] with the reimbursement requirement of an appropriate cost report claim for the specific item under appeal (and the supporting factual evidence and legal argument) *if* a party to the appeal questions whether there was an appropriate claim made.[38] Accordingly, a potential challenge to those regulations only became relevant once the Medicare Contractor filed its Substantive Claim Challenges to trigger Board review of compliance with those regulations.

### B. Board's Analysis of the Appealed Issue

The Providers assert that the regulation at 42 C.F.R. § 413.79(c)(2)(iii) penalizes hospitals which exceed their FTE caps because of the perceived disparate treatment between residents in their initial training period and fellows. The Providers assert that § 413.79(c)(2)(iii) states the following equation for calculating the weighted cap (*i.e.* "Allowable FTE Count") for a particular fiscal year ("FY") and that this formula results in the perceived disparate treatment between IRP residents and fellows. Specifically, the Providers present the following equation in its request for EJR used to calculate the allowable count for primary care and obstetrics and gynecology residents and separately for nonprimary care residents:

$$\text{WFTE}\left(\frac{\text{UCap}}{\text{UFTE}}\right) = \text{WCap}\;[39]$$

Accordingly, the Board set out to confirm the Providers' assertion that § 413.79(c)(2)(iii) does in fact set forth the above equation.

At the outset, the Board notes that, pursuant to the introductory phrase in § 413.79(c)(2)(iii) (*i.e.*, "[i]f the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 2001 exceeds the limit described in this section [*i.e.*, the FTE cap or limit]"), the above equation is used **_only_** when the "Unweighted FTE Count" for a FY exceeds the "Unweighted FTE Cap" in order to determine what the Providers describe as the "Allowable [weighted] FTE count" for the FY.[40] As such, the equation would logically appear to be a

---

[36] PRRB Rule 42.4 (v. 3.1, 2021) ("If the Medicare contractor opposes an EJR request filed by a provider or group of providers, then it must file its response within five (5) business days of the filing of the EJR Request."). The EJR Request was filed on Thursday, January 20, 2022, so a response would have been due no later than 11:59 p.m. (Eastern Time) Thursday, January 27.
[37] 42 C.F.R. § 405.1873 is entitled "Board review of compliance with the reimbursement requirement of an appropriate cost report claim."
[38] *See* 42 C.F.R. § 405.1873(a).
[39] EJR Request at 4.
[40] *See also* 62 Fed. Reg. at 46005 (describing the purpose of the regulation being adopted in the final rule as follows: "To address situations in which a hospital increases the number of FTE residents over the cap, notwithstanding the

Case 1:22-cv-00909-TJK   Document 1-1   Filed 04/04/22   Page 14 of 17

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 14

method used to translate the "Unweighted FTE Cap" into a *weighted* context where the "Allowable FTE count" for a FY is really a "weighted FTE cap" for the FY because it is ***only*** used when the unweighted FTE count exceeds the unweighted FTE cap. Indeed, the Board's description of the product of the equation as a "cap" is consistent with the Secretary's description of it as a "reduced cap" in the preamble to the FY 2002 IPPS Final Rule.[41] Accordingly, the Board will refer to the variable "Allowable FTE count" for the FY as the "Weighted FTE Cap" to facilitate the Board's discussion below on how the equation is conceptually set forth in the text of § 413.79(c)(2)(iii).

Bearing this concept in mind, the Board reviewed the regulation closely and agrees with the Providers that § 413.79(c)(2)(iii) essentially states the above equation, albeit in a slightly different form where the difference is inconsequential and it gives the same results. In its entirety, § 413.79(c)(2)(iii) states:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 2001 exceeds the limit described in this section [*i.e.*, the FTE cap or limit], the hospital's weighted FTE count (before application of the limit) for primary care and obstetrics and gynecology residents and nonprimary care residents, respectively, *will be reduced **in the same proportion*** that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996 [*i.e.*, the FTE cap or limit].[42]

At first blush, it would not appear that the equation is specifically stated in the regulation. However, once the regulation is unpacked around the words "in the same proportion," it is clear that the regulation is relying on ratios as the basis for the equation used to calculate the Weighted FTE Cap applicable for the fiscal year.[43] Indeed, CMS reiterates this in the preamble to the FY 1998 Final Rule by rationalizing § 413.79(c)(2)(iii) as follows: "We believe this ***proportional reduction*** in the hospital's unweighted FTE count is an equitable mechanism for implementing the statutory provision."[44] Essentially, the regulation is stating that the Weighted FTE Cap is to the FY's Weighted FTE Count as the Unweighted FTE Cap is to the FY's Unweighted FTE Count. The calculation of the Weighted FTE Cap is achieved through the operation of the following simple algebraic principle of equivalent fractions[45] (*i.e.*, ratios) using variables a, b, c, and d:

---

limit established under section 1886(h)(4)(F), we are establishing the following policy for determining the hospital's *weighted* direct GME FTE count for cost reporting periods beginning on or after October 1, 1997." (Emphasis added.)).

[41] 66 Fed. Reg. at 39894 (emphasis added).
[42] (Emphasis added.)
[43] *See* 62 Fed. Reg. at 46005 (emphasis added).
[44] *Id.* (emphasis added). *See also* 66 Fed. Reg. at 3984 ("[F]or primary care and obstetrics and gynecology residents and nonprimary care residents, respectively, will be reduced *in the same proportion* that the number of these FTE residents for that cost reporting period exceeds the unweighted FTE count in the cap. The ***proportional reduction*** is calculated *for primary care **and** obstetrics and gynecology residents and nonprimary care residents separately....*" (Emphasis added.)).
[45] Two alternative ways to express the algebraic principle of equivalent functions include:
   If a/b = c/d, then c = (a x d) / b ; and

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 15

$$\text{If } \frac{a}{b} = \frac{c}{d} \text{ then } c = \frac{a}{b} \times d$$

On first side of the initial algebraic equation (*i.e.*, the ratio of "a / b") is the following phrase: "the number of FTE residents for that cost reporting period exceeds [the FTE cap or limit]." This phrase (the **Unweighted FTE Cap** is to the **FY's Unweighted FTE Count**) expressed as a ratio ("a/b") is the Unweighted FTE Cap over the FY's Unweighted FTE Count.[46]

On the other side of the algebraic equation (*i.e.*, the ratio of "c / d") is the following phrase: "the hospital's weighted FTE count (before application of the limit) . . . will be reduced in the same proportion." This phrase expressed as a ratio ("c/d") is an *unknown* Weighted FTE Cap over the FY's Weighted FTE Count. In other words, the unknown Weighted FTE Cap is the resulting value of the weighted FTEs being reduced in the same proportion as the FY Unweighted FTE Count exceeds the Unweighted FTE cap. The full proportional equation is expressed as follows:

$$\frac{\text{Weighted FTE Cap }(c)}{\text{FY's Weighted FTE Count }(d)} = \frac{\text{Unweighted FTE Cap }(a)}{\text{FY's Unweighted FTE Count }(b)}$$

The unknown Weighted FTE Cap (variable "c") is then determined by a/b x d. In other words, the unknown Weighted FTE Cap is determined by the following formula:

$$\textbf{Weighted FTE cap} = \frac{\text{Unweighted FTE Cap}}{\text{Unweighted FTE Count}} \times \text{Weighted FTE Count}$$

This formula is clearly stated in the preambles to both the FYs 1998 and 2002 IPPS Final Rules as previously quoted.

Based on the above, the Board finds that 42 C.F.R. § 413.79(c)(2)(iii) does set forth the equation being challenged and, accordingly, that the Providers are challenging the validity of § 413.79(c)(2)(iii). Since 42 C.F.R. § 405.1867 requires that the Board comply with the requirements of the statute and regulations, the Board lacks the authority to eliminate the regulatory provision that creates the alleged penalty in § 413.79(c)(2)(iii) which is the remedy the Providers are seeking. Consequently, EJR is appropriate for the issue under dispute in these cases.

### C. Board's Decision Regarding the EJR Requests

The Board finds that:

---

If a/b = c/d, then c = (a/b) x d.

[46] Note that, in using equivalent ratios, the key is the relationship of the ratios. As such, the relation between the ratios does not change if they are flipped. For example, if these ratios are flipped, then the initial equation becomes the FY's Weighted FTE Count (variable d) over the Weighted FTE Cap (variable c) equals the FY's Unweighted FTE Count (variable b) over the Unweighted FTE Cap (variable a). The unknown variable is still "c" and you would get the same results where rule would then be: If b/a = d/c, then c = (a/b) x d.

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 16

1) It has jurisdiction over both the DGME Penalty Issue *and* the challenge to the validity of 42 C.F.R. §§ 413.24(j) and 405.1873 for the subject years and that the Providers in this appeal that the Providers are entitled to a hearing before the Board;

2) The following participant appealed the cost reporting period beginning on January 1, 2016 but failed to include "an appropriate claim for the specific item" that is the subject of the group appeal as required under 42 C.F.R. § 413.24(j)(1):

    - UH Richmond Heights Hospital, Provider Number 36-0075, FYE 12/31/2016;

3) Based upon the Provider's assertions regarding 42 C.F.R. § 413.79(c)(2)(iii), as well as the assertions regarding the validity of 42 C.F.R. §§ 413.24(j) and 405.1873, there are no findings of fact for resolution by the Board;

4) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

5) It is without the authority to decide the legal questions of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid *and* whether the regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are valid.

Accordingly, the Board finds that the question of the validity of 42 C.F.R. § 413.79(c)(2)(iii) properly falls within the provisions of 42 U.S.C. § 1395oo(f)(1) and hereby grants the Providers' request for EJR for the DGME Penalty issue and the subject years. The Board also finds that the question of the validity of the substantive claim regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 falls within the provisions of 42 U.S.C. § 1395oo(f)(1) and hereby grants the Providers' request for EJR for the issue and the subject years. The Providers have 60 days from the receipt of this decision to institute the appropriate action for judicial review.

<u>Board Members Participating:</u>
Clayton J. Nix, Esq.
Gregory H. Ziegler, CPA
Robert A. Everts, Esq.
Kevin D. Smith, CPA
Ratina Kelly, CPA

FOR THE BOARD:

2/9/2022

X Clayton J. Nix

Clayton J. Nix, Esq.
Chair
Signed by: PIV

Enclosure: Schedule of Providers

cc:   Judith Cummings, CGS Administrators
      Wilson Leong, FSS

EJR Determination for Case Nos. 19-1720GC
*UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group*
Page 17

# Schedule of Providers

**Case Number:** 19-1720GC
**Case Name:** UHHS CY 2016 Incorrect DGME cap and weighting for residents beyond IRP CIRP Group
**Appealed Period:** CY
**Period End:** 12/31/2016

| Organization # | Organization Name | Cost Reporting Period Affected | Addnl. Cost Reporting Period Affected | MAC Code | Determination Type | Final Determination Date | Issue Submission Date | # of Days | Audit Adjustment Number | Controversy Amount | Provider Status | Fiscal Year End | Provider Source | Transfer From - Case Number | Date GCP Added/ Transferred |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36-0137 | UH Cleveland Medical Center (36-0137) | | | J-15 | Notice of Program Reimbursement (NPR) | 08/22/2018 | 02/14/2019 | 176 | 39, 47 | 1499394 | Active | 12/31/2016 | Transferred | 19-1170 | 04/17/2019 |
| 36-0075 | UHHS Richmond Heights Hospital (36-0075) | | | J-15 | Notice of Program Reimbursement (NPR) | 04/03/2019 | 08/27/2019 | 146 | N/A | 243305 | Active | 12/31/2016 | Direct Add | | 08/27/2019 |